**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　vs.<br><br>TED KAPITAN III,<br><br>　　　　　Defendant.<br><br>United States Citizen<br>YOB: 1964 | Date of Arrest: August 31, 2025<br>Magistrate's Case No. 25-01852MJ<br><br>COMPLAINT FOR VIOLATION OF<br>21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) Possession with Intent to Distribute Methamphetamine<br>Count One<br><br>21 U.S.C. §§ 952, 960(a)(1) and 960(b)(1)(H) Importation of Methamphetamine<br>Count Two |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

<u>COUNT ONE</u>

On or about August 31, 2025, in San Luis, Yuma County, within the District of Arizona, the defendant, TED KAPITAN III, did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii) (felony).

<u>COUNT TWO</u>

On or about August 31, 2025, in San Luis, Yuma County, within the District of Arizona, the defendant, TED KAPITAN III, did knowingly and intentionally import and attempted to import 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, into the United States from

Mexico, in violation of Title 21, United States Code, Sections 952, 960(a)(1) and 960(b)(1)(H)(felony).

And the complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Reviewed by: AUSA Rachel Nava for AUSA Vanessa Kubota.

THOMAS A TAYLOR
Digitally signed by THOMAS A TAYLOR
Date: 2025.09.01 16:40:29 -07'00'

Thomas Taylor
Special Agent – Homeland Security Investigations

Sworn to before me and subscribed telephonically, September 2, 2025, at Yuma, Arizona.

James F. Metcalf
United States Magistrate Judge

**STATEMENT OF PROBABLE CAUSE**

I, Thomas Taylor, Special Agent with Homeland Security Investigations, being duly sworn, declare and state as follows:

**INTRODUCTION AND BACKGROUND OF AFFIANT**

1. Your affiant is a Special Agent ("SA") with Homeland Security Investigations ("HSI") assigned to the Yuma, Arizona office. Your affiant has been a Special Agent for HSI since December 2022. During this period, your affiant has conducted investigations of narcotics smuggling, human smuggling, and immigration offenses. Prior to becoming a Special Agent for HSI Yuma, your affiant was a Uniformed Division Officer with United States Secret Service for three years. During this time, your affiant was assigned to protect the White House, the Vice President's Residence, and Foreign Embassies within the Metro DC Area. Your affiant has completed the Criminal Investigator Training Program ("CITP") and Homeland Security Investigations Special Agent Training ("HSI/SAT") at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia.

2. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

**STATEMENT OF FACTS**

3. On August 31, 2025, at approximately 11:40 a.m., the defendant, Ted KAPITAN III ("KAPITAN"), presented himself and his vehicle for inspection and entry into the United States via the vehicle primary lane six at the San Luis, Arizona, Port of Entry ("SLU POE"). Lane six was being manned by Customs and Border Protection Officer ("CBPO") Macias. KAPITAN was the driver, sole occupant, and registered owner of a 2007, grey in color, Audi Q7 bearing Arizona license plate #X8A3D2 ("TARGET VEHICLE"). KAPITAN claimed to be a United Staes Citizen and provided an Arizona Driver's License (B11012612) and stated that he was at his girlfriend's house in

Mexico for a couple of days and returning home to the United States. KAPITAN gave a negative oral customs declaration and was then sent to the secondary inspection area.

4. At approximately 11:40 a.m., Contraband Enforcement Team Officer ("CET") Galviz was operating the Z-Portal (vehicle X-Ray Scanner) when the TARGET VEHICLE was referred to the secondary lot for further inspection. CET Galviz noticed discrepancies in the undercarriage of the TARGET VEHICLE to include sprayed on mud and notified CBPOs.

5. At approximately 11:45 a.m., CBPO Prieto was assigned to the vehicle secondary lot when KAPITAN and the TARGET VEHICLE arrived. CBPO Prieto asked KAPITAN where he was going, to which KAPITAN replied that he was headed to Walmart and that he was in Mexico visiting his girlfriend. CBPO Prieto escorted KAPITAN to the secondary waiting area and handed the inspection off to the CET.

6. At approximately 11:45 a.m., Canine Enforcement Officer ("CEO") Thomas was assisting CET with the inspection of the TARGET VEHICLE. CEO Thomas was inspecting the TARGET VEHICLE undercarriage with a mirror when he noticed tampering with the vehicle floor and the black plastic undercarriage cover that is screwed into the floor. CEO Thomas noticed what appeared to be a non-factory compartment and notified CET Galvez of his findings.

7. At approximately 12:00 p.m., CEO Torres and his Concealed Humans and Narcotics Detection Dog ("CHNDD") Pajo, performed a sweep of the TARGET VEHICLE. During the sweep, CHNND Pajo alerted to the exterior driver side undercarriage of the TARGET VEHICLE.

8. CBPOs then brought the TARGET VEHICLE to an area just outside the secondary lot to perform an additional search. During the search, CET Galvez found 80 packages wrapped in clear cellophane and aluminum foil, covered in a red oil substance that resembled transmission fluid. All packages were found inside the non-factory compartment concealed in the undercarriage of the TARGET VEHICLE. Additionally, during the search of the TARGET VEHICLE, two cellular phone devices were found. One was found turned on with directions to the Cocopah Casino in Yuma, Arizona and the other was off.

9. CBPOs then extracted 80 shrink-wrapped packages concealed in a non-factory compartment of the TARGET VEHICLE containing a white crystalline substance. A random package was selected, and field

tested by CET Galviz, using the TruNarc testing kit. The results yielded chemical properties consistent with methamphetamine. The total aggregate weight of all packages was documented as 37.65 kilograms.

10. At approximately 2:20 p.m., KAPITAN complained of chest pains and was transported to a local hospital. While at the hospital, HSI SAs Thomas Taylor and Derrick Simon met with KAPITAN after medical staff indicated that he was well enough to talk. At approximately 3:16 p.m., SAs entered KAPITAN's room and began a recorded interview. SAs began by gathering KAPITAN's biological data to include name, date of birth, place of birth, current address, and contact information. At approximately 3:36 p.m., SA Taylor read KAPITAN his *Miranda* Rights to which KAPITAN waived his rights to an attorney, agreed to speak with HSI SAs without an attorney present, and willingly spoke with them.

11. During the interview, KAPITAN stated that, earlier that day, he woke up, took a shower, and came to the United-Mexico border. KAPITAN stated that he had been staying at rental property, but he could not provide SAs with the address. At approximately 3:40 p.m., KAPITAN said that he wished to speak with an attorney and SAs ended the interview.

12. Based upon Your Affiant's training and experience, the amount of methamphetamine in KAPITAN's possession is consistent with the intent for future distribution and sale within the interior of the United States.

13. Subsequently, SAs learned that on August 15,2025 and August 20, 2025, KAPITAN III presented himself and the TARGET VEHICLE for inspection via the San Luis, AZ POE. During these two past events KAPITAN III and the TARGET VEHICLE were referred to secondary and Z-Portal images were captured with no anomalies found. KAPITAN III was then released and allowed entry into the United States.

14. Based on the facts and circumstances stated in this Affidavit, Your Affiant submits that there is probable cause to believe that the defendant, Ted KAPITAN III, did knowingly and intentionally possess with the intent to distribute 37.65 kilograms of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii), and did knowingly and intentionally import 37.65 kilograms of methamphetamine, a Schedule II controlled substance,

into the United States from Mexico, in violation of Title 21, United States Code, Sections 952, 960(a)(1) and 960(b)(1)(H).

THOMAS A TAYLOR
Digitally signed by THOMAS A TAYLOR
Date: 2025.09.01 16:41:24 -07'00'

Thomas Taylor
Special Agent
Homeland Security Investigations

Telephonically sworn on September 2, 2025, at Yuma, Arizona.

James F. Metcalf
United States Magistrate Judge

**Weekend Probable Cause Statement:**

I, Thomas Taylor, being duly sworn, do state the following:

On August 31, 2025, at approximately 11:40 a.m., the defendant, Ted KAPITAN III ("KAPITAN"), presented himself and his vehicle for inspection and entry into the United States via the vehicle primary lane six at the San Luis, Arizona, Port of Entry ("SLU POE"). Lane six was being manned by Customs and Border Protection Officer ("CBPO") Macias. KAPITAN was the driver, sole occupant, and registered owner of a 2007, grey in color, Audi Q7 bearing Arizona license plate #X8A3D2 ("TARGET VEHICLE"). KAPITAN claimed to be a United Staes Citizen and provided an Arizona Driver's License (B11012612) and stated that he was at his girlfriend's house in Mexico for a couple of days and returning home to the United States. KAPITAN gave a negative oral customs declaration and was then sent to the secondary inspection area.

At approximately 11:40 a.m., Contraband Enforcement Team Officer ("CET") Galviz was operating the Z-Portal (vehicle X-Ray Scanner) when the TARGET VEHICLE was referred to the secondary lot for further inspection. CET Galviz noticed discrepancies in the undercarriage of the TARGET VEHICLE to include sprayed on mud and notified CBPOs.

At approximately 11:45 a.m., CBPO Prieto was assigned to the vehicle secondary lot when KAPITAN and the TARGET VEHICLE arrived. CBPO Prieto asked KAPITAN where he was going, to which KAPITAN replied that he was headed to Walmart and that he was in Mexico visiting his girlfriend. CBPO Prieto escorted KAPITAN to the secondary waiting area and handed the inspection off to the CET.

At approximately 11:45 a.m., Canine Enforcement Officer ("CEO") Thomas was assisting CET with the inspection of the TARGET VEHICLE. CEO Thomas was inspecting the TARGET VEHICLE undercarriage with a mirror when he noticed tampering with the vehicle floor and the black plastic undercarriage cover that is screwed into the floor. CEO Thomas noticed what appeared to be a non-factory compartment and notified CET Galvez of his findings.

At approximately 12:00 p.m., CEO Torres and his Concealed Humans and Narcotics Detection Dog ("CHNDD") Pajo, performed a sweep of the TARGET VEHICLE. During the sweep, CHNND Pajo alerted to the exterior driver side undercarriage of the TARGET VEHICLE.

CBPOs then brought the TARGET VEHICLE to an area just outside the secondary lot to perform an additional search. During the search, CET Galvez found 80 packages wrapped in clear cellophane and aluminum foil, covered in a red oil substance that resembled transmission fluid. All packages were found inside the non-factory compartment concealed in the undercarriage of the TARGET VEHICLE. Additionally, during the search of the TARGET VEHICLE, two cellular phone devices were found. One was found turned on with directions to the Cocopah Casino in Yuma, Arizona and the other was off.

CBPOs then extracted 80 shrink-wrapped packages concealed in a non-factory compartment of the TARGET VEHICLE containing a white crystalline substance. A random package was selected, and field tested by CET Galviz, using the TruNarc testing kit. The results yielded chemical properties consistent with methamphetamine. The total aggregate weight of all packages was documented as 37.65 kilograms.

At approximately 2:20 p.m., KAPITAN complained of chest pains and was transported to a local hospital. While at the hospital, HSI SAs Thomas Taylor and Derrick Simon met with KAPITAN after medical staff indicated that he was well enough to talk. At approximately 3:16 p.m., SAs entered KAPITAN's room and began a recorded interview. SAs began by gathering KAPITAN's biological data to include name, date of birth, place of birth, current address, and contact information. At approximately 3:36 p.m., SA Taylor read KAPITAN his *Miranda* Rights to which KAPITAN waived his rights to an attorney, agreed to speak with HSI SAs without an attorney present, and willingly spoke with them.

During the interview, KAPITAN stated that, earlier that day, he woke up, took a shower, and came to the United-Mexico border. KAPITAN stated that he had been staying at rental property, but he could not provide SAs with the address. At approximately 3:40 p.m., KAPITAN said that he wished to speak with an attorney and SAs ended the interview.

Based upon Your Affiant's training and experience, the amount of methamphetamine in KAPITAN's possession is consistent with the intent for future distribution and sale within the interior of the United States.

Subsequently, SAs learned that on August 15,2025 and August 20, 2025, KAPITAN III presented himself and the TARGET VEHICLE for inspection via the San Luis, AZ POE. During these two past events KAPITAN III and the TARGET VEHICLE were referred to secondary and Z-Portal images were captured with no anomalies found. KAPITAN III was then released and allowed entry into the United States.

Based on the facts and circumstances stated in this Affidavit, Your Affiant submits that there is probable cause to believe that the defendant, Ted KAPITAN III, did knowingly and intentionally possess with the intent to distribute 37.65 kilograms of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii), and did knowingly and intentionally import 37.65 kilograms of methamphetamine, a Schedule II controlled substance, into the United States from Mexico, in violation of Title 21, United States Code, Sections 952, 960(a)(1) and 960(b)(1)(H).

Finding Made on:
Date: 9/1/2025
Time: 1700 hrs
Signed: _____
James F. Metcalf
United States Magistrate Judge